FILED
2011 Jul-15 PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEAST DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* STANLEY THOMAS WALLACE, LAURIS JON LEE, and CHARLES RONDALE KNOX,<br><br>Plaintiffs/Relators,<br><br>vs.<br><br>ASTRAZENECA PHARMACEUTICALS LP<br><br>Defendant. | CASE NO. _____<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED**<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. § 3729, *et seq.*]; |

## COMPLAINT

Plaintiffs/Relators Stanley Thomas Wallace, Lauris Jon Lee, and Charles Rondale Knox ("Plaintiffs/Relators"), through their undersigned attorneys, on behalf of the United States of America ("United States"), for their Complaint against Defendant AstraZeneca Pharmaceuticals LP, allege as follows:

### I. NATURE OF THE ACTION

1. Relators bring this action pursuant to the *qui tam* provisions of the False Claims Act (the "FCA" or the "Act"), 31 U.S.C. §§ 3729, et seq., to recover treble damages, civil penalties, and all other relief available under the Act.

2. Defendant AstraZeneca has engaged in a fraudulent scheme to defraud the United States through an illegal off-label marketing campaign of Vimovo™ (EC-naproxen/esomeprazole magnesium) ("Vimovo") based on false, misleading, and deceptive characterizations of the drug's FDA-approved indications in violation of the relevant sections of the Food, Drug, and Cosmetic Act relating to the marketing and

branding of pharmaceuticals.

3. This fraudulent off-label marketing campaign has been instituted by AstraZeneca despite entering into a Corporate Integrity Agreement ("CIA") with the United States Department of Health and Human Services to promote compliance with the statutes, regulations, and written directives of all Federal health care programs along with all statutes, regulations, and written directives of the Food and Drug Administration ("FDA").

4. Despite signing and agreeing to the terms of the CIA, Defendant AstraZeneca willfully and fraudulently disregarded these terms and has waged a national marketing campaign specifically targeting physicians that treat primarily outside the FDA's approved indications for Vimovo, and also targeting other non-steroidal anti-inflammatory drugs ("NSAIDs"). These NSAIDs, unlike Vimovo, have received lawful indications and approval from the FDA for use by general patient populations.

5. Defendant AstraZeneca's off label marketing campaign was implemented with full knowledge that countless patients would have their prescription costs for Vimovo improperly reimbursed through false claims submitted for reimbursement to various federal health programs.

6. As a result of Defendant's false and fraudulent claims, the Defendant has wrongfully obtained millions of dollars from the United States Treasury which they were not entitled to receive.

## II.   JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the instant action pursuant to 31 U.S.C. § 3732(a).

8.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

9.  Jurisdiction is proper and appropriate in this Court over the Defendant because the Defendant transacted business throughout this state, and particularly within the Northern District of Alabama.

10. Venue is proper in this District pursuant to 28 § 1391(b) and (c) and 31 U.S.C. § 3732(a), which provides that any action brought under 31 U.S.C. § 3730 may be brought in any judicial district in which the defendant can be found, resides, transacts business, or in which any act proscribed by 31 U.S.C. § 3729 occurred.

11. The allegations contained herein have not been publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A) and Relators are the original sources of the information contained herein within the meaning of 31 U.S.C. § 3730(e)(4)(B).[1]

### III.  PARTIES

12. Plaintiff/Relator Stanley Thomas Wallace ("Wallace"), is a resident of Decatur, Alabama, and is an individual over the age of twenty-one (21). Plaintiff/Relator Wallace serves as pharmaceutical representative at AstraZeneca for the Central Nervous System ("CNS") Division. He has worked for AstraZeneca since 1995, serving as a pharmaceutical representative through the present time. His territory and marketing responsibility includes the Huntsville, Alabama region.

13. Plaintiff/Relator Lauris Jon Lee ("Lee") is a resident of Birmingham, Alabama, and is an individual over the age of twenty-one (21). Plaintiff/Relator Lee serves as an executive pharmaceutical sales specialist at AstraZeneca for the CNS

---

[1] As required by 31 U.S.C. § 3730(b)(2), the Relators provided to the United States Attorney General and to the United States Attorney for the Northern District of Alabama a Statement of Disclosure containing material evidence and known information in support of this Complaint, and has since provided the United States with a Statement of Disclosure.

3

Division. He has worked for AstraZeneca since 1997, previously serving as a district sales manager from 2001 through 2010. His territory and marketing responsibility now includes Central and South Alabama.

14. Plaintiff/Relator Charles Rondale Knox ("Knox") is a resident of Decatur, Alabama, and is an individual over the age of twenty-one (21). Plaintiff/Relator Knox serves as an executive pharmaceutical sales specialist at AstraZeneca for the CNS Division. His territory includes the Huntsville, Alabama region. He has worked for AstraZeneca, and in the above capacity, since late 1999 through the present time.

15. AstraZeneca Pharmaceuticals, L.P. ("AstraZeneca") is the U.S. subsidiary of a Swedish entity, AstraZeneca PLC, which has its principal place of business at S-151 85 Sodertalje, Sweden. AstraZeneca is a Delaware limited partnership with its principal place of business in Wilmington, Delaware. AstraZeneca is duly authorized to conduct business in the State of Alabama. Its registered agent for service of process is The Corporation Company, 2000 Interstate Park Drive, Ste. 204, Montgomery, Alabama 36109.

16. The Defendant's wrongful acts alleged herein were authorized, ordered, done, and/or ratified by that Defendant's officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of the Defendant's business affairs, sales, and marketing arising from or relating to its drug Vimovo.

**FILED UNDER SEAL**

IV.  **FACTUAL ALLEGATIONS**

    A.  **Vimovo Overview**

17.  Vimovo is AstraZeneca's trade name for the combined drugs naproxen and esomeprazole magnesium. Vimovo was initially approved on April 30, 2010, by the United States Food and Drug Administration ("FDA").

18.  Vimovo has been classified by the FDA as an "S" standard review drug indicated for the pain relief and treatment of osteoarthritis ("OA"), rheumatoid arthritis ("RA"), and ankylosing spondylitis ("AS"). The FDA may approve drugs for certain "indications," that is, for the treatment of certain diagnoses and patient groups, following the submission of supporting evidence by pharmaceutical companies.

19.  Vimovo is the combination of a delayed release traditional NSAID therapy ("naproxen"), along with therapy for gastric ulcers associated with NSAID use ("esomeprazole"). Vimovo is available in the following two dosage forms:

    1. 375mg naproxen/ 20mg esomeprazole magnesium

    2. 500mg naproxen/ 20mg esomeprazole magnesium

20.  AstraZeneca advertises Vimovo as OA pain relief "patients can stay with." AstraZeneca believes the use of Vimovo provides arthritis pain relief while decreasing the side effect of gastric ulcers that accompany daily use of NSAIDs. The immediate release combination of esomeprazole, along with the delayed release of naproxen is effective in reducing gastric ulcers while providing sustained pain relief.

21.  While Vimovo is new to the market, Nexium ("esomeprazole"), is one of AstraZeneca's most profitable drugs. Combined with the well-known demand for

prescription NSAID therapy, Vimovo is soon to be one of AstraZeneca's most important drugs. Monthly courses of treatment can cost up to $120 per patient, or $1,440 per year.

22. Vimovo carries a "black box" warning which informs physicians and patients that this drug may increase the chance of heart attack or stroke, along with the increased chance of stomach problems and ulcers. These warnings specifically note that Vimovo is not approved for use in pediatric patients or for acute pain.

23. After the Vimovo New Drug Application ("NDA") received approval from the FDA, AstraZeneca marketing personnel have developed and rolled out marketing schemes under which Vimovo is to be promoted as long-term pain relief and guaranteed protection against ulcers. Additionally, the marketing scheme is designed to increase prescriptions for non-indicated and off-label use.

24. In conjunction with its illegal off-label marketing scheme, AstraZeneca pressures its sales personnel through field sales incentive reports ("FSIP") to increase sales and market share of Vimovo by targeting the entire NSAIDs market, most of which are indicated for much wider use amongst patient populations, including children and adolescents.

25. In conjunction with its illegal off-label marketing scheme, AstraZeneca specifically includes child psychiatrists and physicians with practices solely or significantly focusing on children and adolescents, or individuals suffering from acute pain in the call plans to which district-level sales personnel are held accountable. Many of these physicians are known by sales personnel to treat few, if any, patients with disease states for which Vimovo is indicated. With full knowledge of the makeup of

these physicians' patient profiles, AstraZeneca expects its sales personnel to increase off-label prescriptions to increase Vimovo market share in comparison to other NSAIDs.

26. In conjunction with its illegal off-label marketing schemes, AstraZeneca FSIP utilizes forecasts which include market data for other NSAIDs. AstraZeneca tracks the performance of their sales personnel against these forecasts, holding them accountable to a market which includes off-label indications.

27. Failure by sales personnel to "measure up" to AstraZeneca's sales objectives, which include off-label indications and populations, can result in negative reviews, punitive action, decreased pay, or termination.

28. In the United States, the percentage of the population suffering from conditions requiring acute pain relief is far greater than the percentage of the population suffering from OA, RA, and AS. AstraZeneca's illegal off-label marketing scheme is designed to tap into this larger market, and the market consisting of children and adolescents, in order to increase AstraZeneca's profits, including prescriptions covered by government healthcare programs such as Medicare and Medicaid.

B. **AstraZeneca's Illegal, Off-Label Marketing and Branding of Vimovo.**

i. **Off-Label Marketing Scheme**

29. In or about September 2007, AstraZeneca, in collaboration with Pozen Pharmaceuticals, initiated two (2) clinical studies in anticipation of filing its NDA with the FDA. These studies, PN400-301 and PN400-302, compared patients taking Vimovo vs. Enteric-Coated Naproxen ("EC naproxen") over a 6-month period. The primary end point was the cumulative incidence of gastric ulcers. The conclusion was that Vimovo significantly reduces the incidence of gastric ulcers, regardless of low-dose aspirin use, in

at-risk patients, and is associated with improved upper gastrointestinal tolerability relative to EC naproxen.

30. Later, AstraZeneca completed two more studies to determine the efficacy of Vimovo in OA patients. These two studies were 12-week randomized, double-blind, placebo-controlled trials in patients with OA of the knee. In each trial, patients receiving Vimovo had significantly better results compared to patients receiving placebo over the 12-week period.

31. AstraZeneca, in direct violation of the CIA and further violation of the statutes, regulations, and written directives of all Federal health care programs and the FDA, has instructed and continues to instruct its sales force to promote Vimovo off-label and misbrand its efficacy in an effort to deceive physicians to increase prescription writing and market share of Vimovo subsidized by Medicare and Medicaid.

32. Since approximately September 2010, the training required of Relators, along with other sales personnel advocates Vimovo as providing "pain relief patients can stay with." AstraZeneca's District Sales Managers coach Relators and all sales personnel to repeat this phrase numerous times when selling Vimovo. This statement combines results from two separate sets of studies with different patient populations, durations, and end points. Neither of these sets of studies were designed or executed to show the efficacy and duration of pain relief in comparison to naproxen or any other NSAIDs. As a result, this statement is in direct violation of FDA and DDMAC guidelines and regulations which prohibit false and misleading statements.

33. On May 18, 2011, Krista Socha, a District Sales Manager out of Memphis, Tennessee, sent an e-mail to her sales force titled "WORDS MATTER." Socha states

that she received a "great message regarding how we deliver our sales calls." Furthermore, she explains that "these changes are **absolutely critical** to our success. We need to be fully aligned here." She goes on to instruct her sales force, including Relators, to use the words "patients 50 and older needing daily NSAID therapy **instead of** patients at risk for gastric ulcer." As stated above, the original misleading statement is typically "OA pain relief your patients can stay with." As demonstrated in Socha's e-mail, she clearly removes the "OA" prefix to coach her sales personnel to mislead doctors into prescribing Vimovo off-label.

34. In another example, on May 19, 2011, District Sales Manager David James out of South Carolina e-mailed fellow District Sales Manager Krista Socha, to prepare the sales personnel for an upcoming teleconference discussing "some of the ways we are utilizing our 'tweaked' messaging." Again, the District Sales Managers emphasize the importance of the words used by their sales force. With regards to Vimovo, James instructs the sales force to repeat the mantra "Vimovo offers pain relief patients can stay with," but further adding that Vimovo offers "guaranteed protection" against gastric ulcers. This is a clear violation of FDA and DDMAC guidelines and regulations prohibiting "guarantees" and false misleading statements.

    ii.    **FSIP Incentives to Market Off-Label**

35. Sales personnel with AstraZeneca are asked to call on physicians throughout their territory. As stated above, they receive field sales incentive plans ("FSIP") which outline each individual's goals, objectives, and incentives. A failure to meet these goals will likely result in demotion and/or termination. In conjunction with the FSIP, sales personnel also receive bi-weekly throughout the year numerous reports

comparing either 1) their territory's market share of various target NSAIDs compared to Vimovo; and 2) physician lists illustrating market share of other target NSAIDs compared to Vimovo. While the Relators' and sales personnel's FSIP pays lip service to only targeting physicians that write prescriptions within the label, the reports circulated internally to the sales force include physicians that write a significant amount of off-label prescriptions, including but not limited to child & adolescent psychiatrists. As a result, it is clear AstraZeneca seeks to influence and entice its sales force to call on physicians that prescribe primarily off-label. Moreover, the Relators and the sales force are held accountable for the overall market share of Vimovo prescriptions versus all other NSAIDs in their territory, despite many of the NSAIDs being indicated for far greater uses, such as acute pain. Moreover, these NSAIDs are indicated for patient populations outside the limited Vimovo indications for patients suffering from OA, RA, and AS.

36. AstraZeneca continues to engage in the fraudulent scheme described in the preceding paragraphs to the present date in order to increase its share in off-label markets.

37. Upon information and belief, the deceptive and illegal, off-label marketing strategy employed by AstraZeneca has resulted in thousands of prescriptions paid for by Medicaid and Medicare, at a cost of millions of dollars to the United States.

## COUNT I
### Violation of the Federal False Claims Act
### § 3729(a)(1), (2) and (3)

38. Plaintiffs/Relators incorporate by reference and re-allege all above paragraphs as if fully set forth herein.

39. This is a claim for treble damages and penalties under the False Claims

Act, 31 U.S.C. § 3729, *et seq.*, as amended.

40. The Federal False Claims Act, 31 U.S.C. § 3729, specifically provides, in part:

> (a)(1) that liability exists for any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government, or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (a)(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> (a)(3) conspired to defraud the Government by getting a false of fraudulent claim allowed or paid.

41. By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval.

42. By virtue of the acts described above, AstraZeneca knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Government to approve and pay such false and fraudulent claims.

43. Each prescription that was written as a result of the Defendant's illegal marketing practices represents a false or fraudulent record or statement. Likewise, each claim for reimbursement for such off-label prescriptions submitted to a federal health insurance program represents a false or fraudulent claim for payment.

44. Relators cannot at this time identify all of the false claims for payment that were caused by AstraZeneca's conduct. The false claims have been presented by thousands of separate entities, across the United States, since April 30, 2010. Relators have no control over or dealings with such entities and have no access to the records in their possession.

**FILED UNDER SEAL**

45. The Government, unaware of the falsity of the records, statements and claims made or caused to be made by the Defendant, paid and continues to pay the claims that would not be paid but for AstraZeneca's false and illegal off-label marketing practices.

46. By reason of the Defendant's acts, the United States has been severely damaged, and continues to be damaged, in substantial amounts to be determined at trial. Federal health insurance programs have paid millions of claims, amounting to billions, or many hundreds of millions of dollars, for off-label prescriptions for indications that were not approved by the FDA.

## COUNT II
### Defendant AstraZeneca's Violation Of The April 2010 Corporate Integrity Agreement With The United States

47. Plaintiffs/Relators incorporate by reference and re-allege all above paragraphs as if fully set forth herein.

48. AstraZeneca entered into a Corporate Integrity Agreement ("CIA") with the United States Government wherein AstraZeneca would comply with all applicable FDA requirements concerning methods for selling, marketing, promoting, advertising, and disseminating information about off-label uses of AstraZeneca's products.

49. By virtue of the above-described acts, among others, Defendant AstraZeneca did knowingly and willfully promote Vimovo for off-label uses from April 30, 2010 onwards.

50. AstraZeneca's sales, marketing, promotional and advertising efforts behind Vimovo have been and continue to be in violation of the CIA.

51.   AstraZeneca is now liable to the United States for penalties pursuant to the CIA.

52.   Because of Defendant's wanton disregard of this CIA, it is now subject to debarment.

WHEREFORE, Plaintiffs/Relators demand judgment against Defendant AstraZeneca as follows:

   a.   That by reason of the aforementioned violations of the Corporate Integrity Agreement that this Court enter judgment, including all damages from said violations, and fines and penalties provided for under the Corporate Integrity Agreement, in Plaintiffs/Relators' favor and against AstraZeneca for violation of the terms of said Agreement;

   b.   That Relators be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

   c.   That Plaintiffs and Relators have such other and further relief that this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs/Relators Stanley Thomas Wallace, Lauris Jon Lee, Charles Rondale Knox and Plaintiffs United States prays for judgment against Defendant AstraZeneca as follows:

   i.   That Defendant be found to have violated and be enjoined from future violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*;

   ii.   That this Court enter judgment against defendant AstraZeneca in an amount equal to three times the amount of damages the United States Government has

sustained because of defendant AstraZeneca's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

      iii.    That Plaintiffs/Relators be awarded the maximum amount allowed pursuant to § 3730(d) of the Federal False Claims Act, and the equivalent provisions of the state statutes set forth above;

      iv.    That Plaintiffs/Relators be awarded all costs of this action, including attorneys' fees and expenses; and

      v.    That Plaintiffs/Relators recover such other relief as the Court deems just and proper or that is necessary to make Plaintiffs/Relators whole.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated: July 12, 2011

                                          Gregory H. Hawley
                                          Rebecca G. DePalma
                                          Christopher J. Nicholson

**OF COUNSEL:**
White Arnold & Dowd P.C.
Massey Building
2025 Third Avenue North
Suite 500
Birmingham, AL 35203
Tel: (205) 323-1888
Fax: (205) 323-8907

                                          G. Douglas Jones
                                          Anil A. Mujumdar
                                          M. Baird Beers Jr.

**FILED UNDER SEAL**

**OF COUNSEL:**
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Tel: (205) 251-1000
Fax: (205) 324-1133

### CERTIFICATE OF SERVICE

    I hereby certify that I have this date served a copy of the foregoing by U.S. mail to the following on this 12th day of July, 2011:

> Lloyd C. Peeples, III
> U.S. Attorney's Office
> 1801 Fourth Avenue North
> Birmingham, Alabama 35203
>
> Eric H. Holder, Jr.
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

    I further hereby certify that under the dictates of 18 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d)(4), the instant Complaint has been served only upon the foregoing party and not upon Defendant AstraZeneca.

_[signature]_
OF COUNSEL